# Kirkland v. The State.

*Indictment for Murder.*

1. *Evidence; when secondary evidence of testimony of absent witness admissible.*—Before the secondary evidence of the testimony of absent witness given on a former trial is admissible upon a subsequent trial, it is necessary to show that said witness has removed from the state either permanently or for an indefinite time, and that his personal attendance upon the court is not obtainable.

[Kirkland v. The State.]

2.  *Evidence of testimony of absent witness; proof of post-mark and
    date of letter.*—Where in seeking to prove the absence of a
    witness who had testified upon a former trial, in order to
    introduce secondary evidence of his testimony, if witness tes-
    tifies to having received a letter from said witness, the highest
    and best proof of the date and post-mark of said letter is the
    paper bearing such post-mark and date, and until the loss of
    such paper is proven, it is not competent to prove the date
    and post-mark by the testimony of the witness who had
    received such letter.

3.  *Homicide; admissibility of evidence.*—On a trial under an in-
    dictment for murder, the fact that after the homicide
    deceased was carried from the place where he was killed in a
    wagon. and with nothing but a band-box under his head, is
    wholly immaterial and irrelevant, and not admissible in
    evidence.

4.  *Same; same.*—On a trial under an indictment for murder, it is not
    error to admit in evidence testimony as to where the defen-
    dant and deceased live.

5.  *Homicide; charge of court to jury.*—On a trial under an indict-
    ment for murder, a charge is erroneous and properly refused
    which instructs the jury "that the defendant need not have
    attempted to retreat, if they believe from the evidence that
    the defendant was free from fault in bringing on the difficul-
    ty, and was in imminent danger of life and limb."

6.  *Same; same.*—On a trial under an indictment for murder, a
    charge is erroneous and properly refused which instructs the
    jury that "if they believe from the evidence that the defendant
    in good faith retired from the difficulty, and after such
    withdrawal was assaulted by the deceased, and was in
    imminent danger of loss of life or great bodily harm, and had
    no reasonable means of retreating, he had the right to strike
    the fatal blow."

APPEAL from the Circuit Court of Houston.

Tried before the Hon. JOHN P. HUBBARD.

The appellant in this case, John C. Kirkland, was
indicted and tried for the murder of Lee Edmondson,
was convicted of murder in the second degree, and sen-
tenced to imprisonment in the penitentiary for 12 years.

On the trial of the case, it was shown by the testimony
that the day of the homicide, the deceased and defen-
dant had been to the town of Dothan, and were return-
ing therefrom in a wagon together, going towards their

homes, and while they were so riding together a dispute arose between them, and the defendant knocked the deceased out of the wagon. After this occurrence the deceased, at the invitation of the defendant, again got into the wagon, and they drove along together. In a short time thereafter they engaged in another quarrel, and the deceased picked up a brick that was lying in the wagon, and struck the defendant on the head with it, knocking him from the wagon; that the deceased also got out of the wagon, and they scuffled awhile in the road; that during the scuffle in the road, the defendant drew his knife and the deceased ran from him and climbed over the fence, and stood behind a barn; that the defendant started in the direction in which the deceased had gone, and took a fence rail with him, and that upon coming to the place where deceased was standing, they got into another difficulty, in which the defendant stabbed the deceased with his knife, and killed him.

It was also shown that at the time of the difficulty, both the defendant and deceased were under the influence of whiskey.

During the examination of two of the witnesses for the State, the solicitor for the State asked them in what direction the defendant and the deceased lived from the place of the killing, and what was the distance. To each of these questions the defendant separately objected upon the grounds that it called for illegal, irrelevant and immaterial evidence.

The court overruled each of these objections, and to each of such rulings the defendant separately excepted.

During the examination of some of State's witnesses, and in answer to the questions propounded to them, they were allowed by the court, against the objection and exception of the defendant, to testify that when they carried the deceased home after he had been killed, they carried him in a wagon with only a band-box under his head.

The facts relating to the admission of secondary evidence of the testimony of Peyton Kirkland are sufficiently shown in the opinion.

[Kirkland v. The State.]

During the examination of Miss Lillie Edmundson, the daughter of deceased, and after she testified that she corresponded with Peyton Kirkland, and had received a letter from him some time in October, 1903, she was asked the following questions: "Where was said letter dated and post-marked?" The defendant objected to this question because it called for illegal, irrelevant and immaterial evidence, and because the letter referred to, with its date and post-mark, was the highest and best evidence. The court overruled the objection, and the defendant duly excepted.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "The court charges the jury that the defendant need not have attempted to retreat, if they believe from the evidence that the defendant was free from fault in bringing on the difficulty, and was in imminent danger of life and limb." (2.) "The court charges the jury that if they believe from the evidence that the defendant in good faith retired from the difficulty, and after such withdrawal, was assaulted by the deceased, and was in imminent danger of loss of life or great bodily harm, and had no reasonable means of retreating, he had the right to strike the fatal blow."

Espy & Farmer, for appellant.—It was erroneous for the court to allow the State to prove that the body of the deceased was carried from the place of the killing with nothing under his head but a band-box. Such evidence was calculated to prejudice the jury.—*Oakley v. The State*, 33 So. Rep. 23; *Nelson v. State*, 130 Ala. 83; *Abernathy v. State*, 129 Ala. 85.

The secondary evidence of the testimony of Peyton admissible.—*Low v. The State*, 86 Ala. 49; *Jacobi v.* admissible.—*Low v. The State*, 86 Ala. 49; *Jacobi v. State*, 133 Ala. 1; *Dennis v. State*, 118 Ala. 72; *McMunn v. State*, 113 Ala. 85; *Wheat v. State*, 110 Ala. 68; *Thompson v. State*, 106 Ala. 67; *James v. State*, 104 Ala. 20.

The charges requested by the defendant should have

been given.—*Deal v. State,* 34 S. R. 23; *DeArmon v. State,* 71 Ala. 331.

MASSEY WILSON, Attorney-General for the State.—It was competent to introduce testimony of the absent witness on a former trial.—*Jacobi v. The State,* 133 Ala. 1.

Charge 1 requested by the defendant was erroneous, and properly refused.—*Parker v. State,* 88 Ala. 4; *Crawford v. State,* 112 Ala. 1, 33.

SHARPE, J.—It is the law, as declared in this State, that when on a trial of a criminal case it is shown that one who testified on a former trial of the defendant for the same offense has removed from the State, permanently or for an indefinite time, and that his personal attendance upon the court is not obtainable, the testimony of such absent witness, given on the former trial, is admisible against the defendant on the subsequent trial.—*Jacobi v. State,* 133 Ala. 1; *Percy v. State,* 125 Ala. 51; *Thompson v. State,* 106 Ala. 67; *Lowe v. State,* 86 Ala. 47. Under this rule had it been proved that Peyton Kirkland had removed from the State permanently or for an indefinite time, evidence of what he swore on the *habeas corpus* trial of the defendant held in August, 1903, would have been admissible on the main trial. As evidence of such removal defendant had the right to prove that letters written by Peyton Kirkland were postmarked and dated in Florida. The best evidence, however, of such marking and dating would have been furnished by the papers on which the same appeared, and, therefore, the objection made to the testimony of Miss Edmondson on this subject, on the ground that it was not the highest evidence, should have been sustained. This testimony bore directly upon the inquiry under which it was offered and the fact that it was collateral to the issue of guilt *vel non,* did not dispense with the necessity of accounting for the absence of the papers.—*Trammell v. Hudmon,* 86 Ala. 472.

Ordinarily one accused of a criminal offense has a constitutional right to be confronted on his trial with

the witnesses against him. The rule which allows as evidence previously given testimony of an absent witness being exceptional and founded upon necessity, "it is esential to the admissibility of the evidence that some one of the contingencies, which are deemed to create the necessity be satisfactorily shown.—*Thompson v. State, supra.* It was not shown that Peyton Kirkland had been summoned or recognized to attend the trial. On the subject of his absence, R. H. Walker, testified "that he was the sheriff of Houston county and that a subpoena for Peyton Kirkland, as a witness for the State in this case, had been placed in his hands a short time before this trial, and that he had searched the county carefully and thoroughly and could not find him." R. H. Maddox testified "that up to the time of the *habeas corpus* trial which was held in August of this year that Peyton Kirkland lived in the same community where he, defendant and Edmondson lived; that since said *habeas corpus* trial he had gone out of the community and was not now in the community; that he had seen a letter from said Kirkland within the last three or four weeks and that it was postmarked at Center Hill, Florida." Miss Edmondson testified "that she was the daughter of the deceased, that since his death she had lived at Headland, Henry county, Alabama; that she knew Peyton Kirkland; that he lived at Webb, Houston county, Alabama; that he was a young man and she corresponded with him:" "that she received her last letter from him some time in October, 1903;" "that she knew the handwriting of Peyton Kirkland and that she had received letters from him prior to the one about which she was testifying." These are quotations of testimony from the transcript and they disclose all the evidence on the subject to which they relate. Therefrom, it does not appear but that the letter Maddox saw was the one Miss Edmondson received or that she received more than one letter sent from Florida. It establishes no more with respect to the absence of the witness than that in the month next before the month of November in which the trial was had he went to Florida and had thereafter remained out of Houston county,

Alabama, to the time of the trial. In our opinion this evidence, even if the whole of it be treated as properly admitted, is insufficient to establish a predicate for the introduction of evidence of the testimony given on the *habeas corpus* trial.

The fact that deceased was carried from where he was killed in a wagon and with nothing but a band-box under his head, was immaterial.

There was no error in admitting the evidence as to where the defendant and Edmondson lived.

The refusal of instructions to the jury involved no error. Except under circumstances involving the right to repel a forcible and felonious attempt at crime, a person attacked, is not by reason of his own freedom from fault and imminent danger, absolved from the duty of retreat, if it reasonably appears that by retreat he can avoid the danger.—*Storey v. State*, 71 Ala. 329. With this the first requested instruction is not consistent.

The second requested instruction by asserting that on the facts hypothesised defendant "had the right to strike the fatal blow," wrongly ignores the principle which limits the right of a person acting in self-defense to the use of only so much force as may reasonably seem necessary for such defense.

Reversed and remanded.

### *Indictment for Murder.*

