(90 South. 131)

## NAILER v. STATE. (8 Div. 736.)

(Court of Appeals of Alabama. April 19, 1921.)

**1. Criminal law ☜260(13)—Complaint filed on appeal from county court becomes charge against defendant.**

Where, in a prosecution originating in the county court, the solicitor, on appeal to the circuit court, files a complaint under Code 1907, § 6730, such complaint becomes the charge against defendant based on the original affidavit.

**2. Criminal law ☜260(13)—Complaint on appeal from county court amendable when affidavit not void.**

Where the affidavit filed in the county court as the basis of a prosecution is not absolutely void, the complaint based thereon in the circuit court is amendable, so as to cure any inaccuracies or irregularities.

**3. Criminal law ☜260(13)—On appeal from county court, defendant should plead to complaint, and not to affidavit.**

Where, on appeal to the circuit court in a prosecution originating in the county court, the solicitor files a complaint under Code 1907, § 6730, the plea or demurrer of defendant is to such complaint and not to the original affidavit unless the original affidavit is void, and charges no offense, in which event the motion should be to quash.

**4. Criminal law ☜1116—Overruling of demurrer not considered when record does not show demurrer.**

On appeal to the Court of Appeals in a case originating in the county court, the contention that a demurrer to the complaint filed in the circuit court should have been sustained will not be passed on where the record fails to disclose any demurrer filed to the complaint.

**5. Criminal law ☜402(1)—Notice to dip cattle cannot be proved by secondary evidence unless predicate laid.**

In a prosecution under Acts 1919, p. 30, § 5, for failing to dip cattle pursuant to notice, the contents of the notice to dip cannot be proved by secondary evidence until a proper predicate has been laid for such evidence.

**6. Animals ☜36—Notice to dip cattle or evidence of contents must be produced.**

In a trial for failing to dip cattle pursuant to notice given under Acts 1919, p. 30, § 5, defendant is entitled to be confronted with the writing, or, in case of its loss or destruction, with evidence of its contents in order that the court may pass on its sufficiency and the jury may determine in accordance therewith defendant's guilt; and where there was no legal evidence of the contents of the notice, the conviction must be reversed.

**7. Animals ☜36—Proof of notice to dip cattle held not waived by accused.**

On a trial for failing to dip cattle upon notice from the inspector under Acts 1919, p. 30, § 5, defendant's testimony that he remembered when the inspector gave him a notice of some kind about dipping a cow was not a waiver of proof of the contents of the notice.

**8. Animals ☜36—Requisites of complaint for failure to dip cattle stated.**

Under Acts 1919, p. 30, § 5, relative to dipping cattle, a complaint for a violation thereof must allege that defendant had in his possession or charge as owner, agent, or otherwise an animal in a tick-infested or quarantined county or premises, range, farm, or pasture not released from quarantine, and failed to dip such animal regularly once every two weeks, as required by law, on the day and at the vat most convenient or nearest, as notified in writing by the inspector in charge of the district.

**9. Animals ☜34—Notice to dip cattle must substantially conform to statute.**

A notice to dip cattle under Acts 1919, p. 30, § 5, must substantially conform to the requirements of the statute.

**10. Animals ☜34—Failure to dip animal sold held not offense.**

Under Acts 1919, p. 30, § 5, requiring every person having possession or charge as owner, agent, or otherwise of cattle in a tick-infested or quarantined county or premises, range, farm, or pasture not released from quarantine to dip cattle regularly once every two weeks, and providing that one notice to dip shall be sufficient, there is no penal liability for failure to dip where defendant disposed of the cow he was notified to dip, and did not have it in his possession or control on the date on which he was required to dip.

Merritt, J., dissenting.

Appeal from Circuit Court, Marshall County; W. W. Harralson, Judge.

C. F. Nailer was convicted of failing to dip cattle after notice, and he appealed. Reversed and remanded.

Orr & Killcreas, of Albertville, for appellant.

The court erred in admitting evidence of the contents of the notice to dip. Jones on Ev. §§ 218, 219, 376. The stub was not admissible. 94 Ala. 384, 10 South. 312; 94 Ala. 394, 10 South. 334; 18 Ala. 359; 15 Ala. 112; 103 Ala. 257, 15 South. 594; 105 Ala. 257, 16 South. 714; 173 Ala. 629, 55 South. 909; 169 Ala. 409, 55 South. 989, Ann. Cas. 1912B, 366. Counsel also discuss the pleadings, but in view of the opinion, it is not deemed necessary to here set them out.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Counsel discuss the various assignments of error, but without citation of authority.

SAMFORD, J. The defendant was charged by affidavit and complaint with having violated section 5 of an act of the Legislature approved February 7, 1919 (Acts 1919, p. 30), which reads as follows:

"That every person, firm, company or corporation having in possession or in charge as owner, agent or otherwise one or more cattle in a tick-infested or quarantined county or on a tick-infested or quarantined premise, range, farm or pasture, that has not been released from state and federal quarantine, shall dip the cattle regularly once every two weeks on the day and at the vat specified by the inspector in charge of the vat most convenient or nearest to the cattle. One printed or written dipping notice, given by the inspector to the person or persons in charge of or in possession of the cattle, shall be legally sufficient to require the owner, agent, firm or person in charge to dip the cattle regularly every two weeks until released from quarantine."

[1-4] The prosecution originated in the county court, and on conviction in that court the defendant appealed to the circuit court, where, as required by statute, the solicitor filed a complaint as required by statute. Code 1907, § 6730. This complaint when filed becomes the charge against the defendant, based, of course, upon the original affidavit. If the affidavit is not absolutely void, the complaint is amendable so as to cure any inaccuracies or irregularities. Miles v. State, 94 Ala. 106, 11 South. 403. The plea or demurrer of defendant is to the complaint as filed by the solicitor, and not to the original affidavit, unless the original affidavit is void and charges no offense, in which event the motion should be to quash. Moneyhan v. State, 15 Ala. App. 482, 73 South. 900. In this case the record fails to disclose any demurrer filed to the complaint, and hence this court will not pass upon an insistence that a demurrer to the complaint should have been sustained.

[5, 6] On the trial of the case the court, over the timely objection and exception of the defendant, permitted the state to introduce a stub dated April 16, 1919, which the witness stated showed the date upon which the notice was served. The state's witness Shirey was also allowed to testify, over the timely objection and exceptions of defendant, in a general way and to the conclusion that he, as inspector, had served a notice to dip on the defendant. But as to what the notice contained the record is silent, there being no copy of the notice in the record and no testimony even of a secondary nature establishing its contents, except the conclusion of the witness that it was "a notice to dip." It was competent for the inspector

to testify that he had served the defendant with a notice, but as to its contents it is a rule well established that secondary evidence of the contents of a writing is not admissible until a proper predicate has been laid. Bell v. State, 156 Ala. 76, 47 South. 242; Kirkland v. State, 141 Ala. 45, 37 South. 352. There was also some testimony as to a conversation between the defendant and the inspector relative to when, where, and how the cow was to be dipped. This evidence was not admissible to prove the contents of the notice for the lack of a predicate, and for any other purpose it was immaterial. The statute requires the notice to be given in writing. Such writing determines defendant's liability, and the defendant is entitled to be confronted with the writing, or, in case of loss or destruction, with evidence of its contents, that the court in the first place may pass upon its sufficiency, and the jury in the next place may say whether, in accordance with the notice, the defendant is guilty or innocent.

[7, 8] It is true the defendant, while testifying as a witness, said:

"He remembers the time when he (the inspector) came to the garage in Boaz and gave him a notice of some kind about dipping a cow."

But this statement cannot be construed into a waiver of proof of the contents of the notice. A written notice was the basis of the prosecution, and nothing short of the notice or legal evidence establishing its contents will justify a conviction. If the complaint had been demurred to, assigning proper grounds, the demurrer would have been sustained, unless the complaint alleged in effect, besides the formal averments, that the defendant, having in his possession or charge as owner, agent, or otherwise, a cow in a tick-infested or quarantined county or tick-infested or quarantined premise, range, farm, or pasture that had not been released from state and federal quarantine, failed to dip such cow regularly once every two weeks as required by law on the day and at the vat most convenient or nearest to the cow, as he had been notified in writing to do by the inspector in charge of said district. Miles v. State, 94 Ala. 106, 11 South. 403.

[9] The notice given, being the basis of the prosecution, must substantially conform to the requirements of the statute before a conviction can be had, and the defendant is entitled to have such notice passed upon and construed by the court before he is required to offer evidence in his defense. The statute is penal, and must be strictly construed, and a defendant charged with its violation must be tried according to the forms of law. It is bad enough that, in the exercise of the police power, the trend of legislative enactment is toward the establishment of "bu-

reaucracy"; but it would be fair worse if the courts, in the prosecution arising under these laws, should allow the agents of the governments to substitute their conclusions for legal evidence and their judgments for the verdicts of juries. There is no legal evidence in this record establishing the contents of the notice necessary to have been given to the defendant as a condition precedent to the requirement that he dip his cow, as required by the statute, and the several rulings of the court not in conformity to the views hereinabove expressed are errors necessitating a reversal of this case.

[10] It is perhaps unnecessary to pass upon the other questions presented by the record, but, as the cause must be tried again, it may be that a further construction of the statute may be of value. If the evidence shows beyond a reasonable doubt a notice in writing served on the defendant, which notice conforms to the requirements of the statute, and it appears from the evidence that the defendant was, on the date named in the notice at which he was required to dip, the owner, or in charge of the cow, either as owner or agent or otherwise, in a tick-infested or quarantined premise, range, farm, or pasture that had not been legally released from quarantine, and the defendant failed or refused to dip said cow in conformity to said notice, he would be guilty, under section 5 of Acts 1919, p. 30, supra. We do not think that the obligation to dip becomes penal unless, on the date upon which the defendant is required to dip, he is the owner or in possession or control of the cow. The act itself, as a valid exercise of the police power, has been upheld by our Supreme Court. Dodd v. Commission Court, 203 Ala. 271, 82 South. 521. But nowhere in the act is it provided that a sale of cattle may not be made; and if, in the exercise of the right to sell, a party has sold and disposed of the cattle he has been notified to dip, no criminal liability to dip continues on him.

We may also add that neither the affidavit upon which the complaint is based nor the complaint as filed charges, even in the most informal way, that notice to dip was ever given to the defendant, and it is only the very liberal construction given to affidavits that saves the affidavit from the claim that it charges no offense known to the law.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

BRICKEN, P. J., and SAMFORD, J., concur.

MERRITT, J. (dissenting). The appellant was convicted for a failure to dip cattle in accordance with the Tick Eradication Law approved February 7, 1919 (Acts 1919, p. 29). The case originated in the county court,

and an appeal was taken to the circuit court. The demurrers filed in the circuit court cannot be considered here, for the reason that they purport to be filed to the affidavit and warrant, which affidavit was not filed in the circuit court, but the record shows that the solicitor filed a complaint in the circuit court, and that the trial was on this complaint. While the demurrers were filed in the circuit court, and bear date of filing January 20, 1920, the complaint was not filed until January 21, 1920, and the record does not show the filing of any demurrers after the filing of the complaint. Warble v. Sulzberger, 185 Ala. 603, 64 South. 361; B. R., L. & P. Co. v. Fox, 174 Ala. 657, 56 South. 1013.

There was no reversible error in refusing to permit the defendant to show that the inspector had permitted other persons to wash their cattle in the solution, rather than require them to dip. George Patterson v. State, ante, p. 55, 88 South. 360.

The witness Shirey, after stating that he knew the defendant, said: "I 'served him with a dipping notice." No question is set out which called for this answer, but after the above answer was made the defendant objected to the question, whatever that was. He was then asked by the state, "Just how did you prepare those written notices?" Objection was made, on the ground that the notice was the best evidence. The witness was allowed to answer, and stated that he "had a form of dipping notices, a form I had to fill out myself." In overruling the objection of the defendant there was no reversible error, as it does not appear that this had reference to the particular notice served on the defendant, but generally as to how they were prepared.

The witness then testified that he kept a stub of the notice. He was then shown a stub, and asked if it was a stub of the notice served on the defendant. The record does not show that the defendant objected to the question, but that he excepted, on certain grounds; that is, that the notice is the best evidence, and until the original was accounted for there could be no secondary evidence. It was certainly permissible for the witness to testify that it was a stub of the notice, and this was not proving the contents of the notice any more than that the notice, if introduced, would have proved the contents of the stub. The state then asked the witness, "Does that stub show the date April 16, 1919, upon which notice was served?" The defendant objected, on the ground that the notice was the best evidence, and the stub is inadmissible. These were not good grounds of objection. We fail to see how the notice would be the best evidence of the contents of the stub. The record then recites that the stub was offered in evidence, but it nowhere appears what the contents of

the same was, and the ruling of the court for this reason will not be held error. The witness was then allowed to testify over the objection of the defendant that the stub was correct at the time he made it, and in so doing there was no reversible error. The witness was then asked if he had a form of the same notice as he gave the defendant, and he answered, "Yes," the question being objected to, and a motion made to exclude the answer. The question was then asked, "Is the notice you gave the defendant just like this one except the writing part?" and he answered, "Yes, sir." This question was also objected to, and motion made to exclude the answer. We cannot say there was any reversible error in these rulings, for the reason that neither the form nor the notice inquired about are set out in the record, nor is it shown that either was ever offered in evidence. When the witness was asked "Which one of the stubs in the back is it you say you gave Nailer the original of?" he answered, "This one right here." The defendant then objected to the testimony because "the stub is written C. T. Nailler," and because the stub was different from the original notice. The objection being overruled, the defendant reserved an exception. As stated before, the trial court cannot be placed in error on account of such ruling, as neither the stub nor the original notice are copied into the record. But, assuming there was error in the several rulings of the trial court in reference to the testing of the stub, its date, and its comparison to the notice served on the defendant, these could not benefit the defendant, as they are clearly without injury to him. These facts stand uncontradicted in evidence, in regard to notice to the defendant to dip his cow. The witness Shirey testified:

"I served him with a dipping notice." "I gave the notice to the defendant;" that he was in Boaz when he wrote the notice; that the defendant was in a garage when he served the notice on him; that at the time he served the notice on the defendant they passed a few words, and that he laid the notice in his lap; "that he notified the defendant on the 16th, that the dipping day was the 17th at Boaz vat and the 18th at Bailey vat."

John Lewis, a witness for the state, testified in regard to the notice:

"That he had a conversation with the defendant before the prosecution and after the notice was served, and the defendant said he had the cow in his possession when the notice was served," and that he contracted to sell the cow after "the notice was served."

On this question the defendant testified:

That he knew the witness Shirey; "that he remembers the time when he came to the garage in Boaz and gave him a notice of some kind about dipping a cow. That he had a conversation when he delivered the paper, in which he said I had to dip my cow fourteen times; * * * that he did not read the notice; that the next day was dipping day at Boaz vat, and the next day at Bailey vat;" that he immediately got in his car and went and sold the cow; "that this was on the 16th, and within an hour after the notice was given him;" that he owned the cow the day notice was served.

This appears to be all there is in the record in regard to the notice, and to my mind sufficiently establishes the fact that sufficient notice was served on the defendant as required by law; in fact that does not appear to have been a question in the trial court, and is in effect assumed as a fact in counsel's brief for appellant, the serious insistence here being not that notice was not given, but that the defendant had absolved himself from liability to dip by an agreement "after notice" to sell the cow, which sale was afterwards consummated. I am not yet willing to commit myself to the proposition that, by disposing of his cow after notice to dip, the other facts being shown—possession at the time of service of notice, and this possession or ownership in a tick-infested district—the defendant can absolve himself from liability to dip by a sale thereafter; certainly not such a sale, as is shown by the facts in this record, one admittedly for the purpose of evading the provision of the act, and a sacrifice of his property rather than comply with the provisions of a reasonable police regulation and in the face of that provision in section 5 of the act, which says:

"One printed or written dipping notice, given by the inspector to the person or persons in charge of or in possession of the cattle, shall be legally sufficient to require the owner, agent, firm, or person in charge to dip the cattle regularly every two weeks until released from quarantine"

—and the further provisions in section 15:

"That each failure to dip quarantined animals after receiving legal notice shall be a misdemeanor. Each movement of quarantined animals without a permit from an inspector shall be a misdemeanor."

It is not, however, necessary to anticipate this question in the case at issue, for it appears from the testimony that the defendant was in the possession of the cow on the 17th, one of the dates upon which he was required to dip her, and this in a tick-infested area, and that he failed to dip her. And, these things being so, there is, in my opinion, no doubt of the correctness of the action of the trial court in giving the affirmative charge for the state, and therefore that the judgment appealed from should be affirmed.